STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph L. SMET, Defendant-Appellant.†

Court of Appeals

*No. 2005AP690–CR. Submitted on briefs September 29, 2005.
—Decided November 9, 2005.*

2005 WI App 263

(Also reported in 709 N.W.2d 474.)

† Petition to review denied 1-20-06.

528

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher A. Mutschler*, of *Anderegg & Mutschler, LLP* of Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *David J. Becker*, assistant attorney general, and the supplemental brief of *Scot Mortier*, assistant district attorney for Fond du Lac county.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Joseph L. Smet appeals from a judgment of conviction for operating a motor vehicle with "a detectable amount of a restricted controlled substance" in his blood, contrary to WIS. STAT. § 346.63(1)(am) (2003–04).[1] On appeal, Smet challenges the constitutionality of this statute. He contends that it exceeds the scope of the legislature's police power and thereby violates the constitutional guarantees of due process, fundamental fairness and equal protection. We uphold the trial court's ruling that the statute passes constitutional muster and affirm the judgment of conviction.

## FACTS

¶ 2. The relevant facts are straightforward and are not in dispute. On June 1, 2004, Smet was arrested by a Fond du Lac County Sheriff's Deputy on suspicion of operating a motor vehicle while intoxicated. The arresting officer transported Smet to St. Agnes Hospital where Smet agreed to submit to a chemical test of his blood. The analysis of Smet's blood showed no

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

measurable concentration of ethanol, but did reveal a measurable concentration of 3.2 nanograms per milliliter of delta-9–THC, the primary active ingredient in marijuana, and 3.2 nanograms per milliliter of 11–hydroxy-THC and 95 nanograms per milliliter of carboxy-THC, two metabolites of THC. As a result, a criminal complaint charged Smet with operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood, contrary to WIS. STAT. § 346.63(1)(am).[2]

¶ 3.   Smet moved to dismiss the complaint on the grounds that WIS. STAT. § 346.63(1)(am) is unconstitutional. He contended that the statute exceeds the legislature's police power and violates his rights to due process, fundamental fairness and equal protection, as guaranteed to him under both the federal and state constitutions. The trial court rejected Smet's arguments. The parties then stipulated to a pro forma trial at which the trial court found Smet guilty as a repeat offender. Smet appeals from the resulting judgment of conviction.

## DISCUSSION

¶ 4.   On appeal, Smet renews the constitutional challenges to WIS. STAT. § 346.63(1)(am) that he raised in the trial court. The statute provides:

**346.63 Operating under influence of intoxicant or other drug. (1)** No person may drive or operate a motor vehicle while:

. . . .

---

[2] Smet was charged criminally because he had prior convictions under WIS. STAT. § 346.63(1). *See* WIS. STAT. § 346.65(2).

(am) The person has a detectable amount of a restricted controlled substance in his or her blood.

"Restricted controlled substance" means any of the following:

(a) A controlled substance included in schedule I under ch. 961 other than a tetrahydrocannabinol.

(b) A controlled substance analog, as defined in s. 961.01(4m), of a controlled substance described in par. (a).

(c) Cocaine or any of its metabolites.

(d) Methamphetamine.

(e) Delta-9–tetahydrocannabinol.

WIS. STAT. § 340.01(50m). Section 346.63(1)(am) applies only to illegal restricted controlled substances because § 346.63(1)(d) provides an affirmative defense if the defendant has a prescription for the substances.

■

¶ 5.    The constitutionality of a statute presents a question of law that we review de novo. *State v. Cole*, 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328. We also must bear in mind the general principles that govern the review of a constitutional challenge. *See id.*, ¶ 11. Notably, we presume that a legislative enactment is constitutional, "indulg[ing] every presumption to sustain the law if at all possible," and resolving any doubt in favor of constitutionality. *Id.* (citation omitted). The challenging party thus faces a heavy burden and must prove unconstitutionality beyond a reasonable doubt. *Id.* With these principles in mind, we address Smet's specific constitutional challenges.

## 1. Police Power and Due Process

¶ 6. Smet first contends that Wɪs. Sᴛᴀᴛ. § 346.63(1)(am), requiring only proof of "a detectable amount" of a banned substance and not proof of impairment, represents an unconstitutional overstep by the legislature in the exercise of its police power. This overstep, he submits, violates his rights to due process and fundamental fairness.

¶ 7. The police power is the inherent power of the government to promote the general welfare, and covers all matters having a reasonable relation to the protection of the public health, safety and general welfare. *State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989). When the exercise of the police power is challenged on due process grounds, the test is whether the means chosen have a reasonable and rational relationship to the purpose or object of the enactment. *Kahn v. McCormack*, 99 Wis. 2d 382, 385, 299 N.W.2d 279 (Ct. App. 1980). If they do, and the object is a real and proper one, the exercise of the police power is valid. *Id. Accord McManus*, 152 Wis. 2d at 130.

¶ 8. Because the driving of an automobile upon public roads is not a property right but a privilege, it is subject to reasonable regulation under the police power in the interest of public safety and welfare. *State v. Stehlek*, 262 Wis. 642, 646, 56 N.W.2d 514 (1953). Smet agrees that maintaining safe roadways is a proper object of the police power. He questions, however, whether there exists a reasonable and rational relationship between that legislative objective and Wɪs. Sᴛᴀᴛ. § 346.63(1)(am) because the statute requires no show-

ing of impairment. The clear implication of Smet's position is that it lies within this court's authority to invalidate this legislative enactment.

¶ 9. The State counters that while some cases would permit us to determine whether the means are reasonably and rationally related to the ends, others such as *Bisenius v. Karns*, 42 Wis. 2d 42, 165 N.W.2d 377, *appeal dismissed*, 395 U.S. 709 (1969), and *State v. Hermann*, 164 Wis. 2d 269, 474 N.W.2d 906 (Ct. App. 1991), teach otherwise:

> We are uneasy with this balancing and weighing concept of the judicial role in testing the constitutionality of a police power statute. There is too much of a temptation to a putting of a judicial thumb on the scales with judges substituting their own evaluation of alternatives for that of the legislature. We would hold that, once within the area of proper exercise of police power, it is for the legislature to determine what regulations, restraints or prohibitions are reasonably required to protect the public safety and only the abrogation of a basic and substantial individual liberty would justify judicial intervention to set aside the legislative enactments.

*Bisenius*, 42 Wis. 2d at 54 (footnote omitted); *see also Hermann*, 164 Wis. 2d at 285. The State then posits that, despite possible imprecision in the case law and "independent of the police powers doctrine," we nonetheless should examine whether the legislation bears a reasonable and rational relationship to the purpose because that is the test mandated by a due process analysis.

¶ 10. The State may be overstating the confusion in the law. We need not decide here, however, whether *Bisenius* in fact holds that a challenger's only recourse is the ballot box, or whether perhaps it is simply a

reminder of the heavy burden the challenger bears—proof beyond a reasonable doubt. We leave the assessment of the court's role in evaluating the reasonableness of legislative measures for another day when that issue is more squarely before us.

¶ 11.   We also question the State's position insofar as it treats as distinct due process and police power challenges. The concepts actually are intertwined where the objection is to the legislative means employed. *See McManus*, 152 Wis. 2d at 130; *see also Kahn*, 99 Wis. 2d at 385. Therefore, having determined that the safety of the state's roadways is a proper area of exercise of the police power, *see Stehlek*, 262 Wis. at 646, and since neither party objects, we will proceed with the next step of Smet's due process challenge, which is to examine whether the statute is a reasonable and rational means to the legislative end.

## 2. Reasonable and Rational Relationship

¶ 12.   Smet argues that the statute violates his right to due process because it lacks a reasonable and rational underpinning since, "[a]lmost comically," it is situated in Wis. Stat. § 346.63, entitled "Operating under influence of intoxicant or other drug," yet impairment at the time of driving always has been "the *sine qua non* of any prosecution under § 346.63."

¶ 13.   On its face, this argument fails for at least two reasons. First, contrary to Smet's assertions, proof of impairment is not necessary for all other Wis. Stat. § 346.63 violations. *See McManus*, 152 Wis. 2d at 131. Impairment has not been a prerequisite for prosecution under the "driving under the influence" statute since 1981. *See State v. Muehlenberg*, 118 Wis. 2d 502, 505, 347 N.W.2d 914 (Ct. App. 1984). "The statute represents

534

a legislative determination that public safety is per se endangered when a person drives a motor vehicle while having a specified concentration of . . . alcohol in the blood." *Id.* (footnote omitted). The placement of § 346.63(1)(am) in this statute plainly signifies an endorsement of that same legislative determination as it relates to drivers with a detectable concentration in their blood of various controlled substances.

¶ 14.   Second, the challenged enactment's placement in a statute captioned "Operating under influence of intoxicant or other drug" is of no significance. A section caption is not part of the statute. *State v. Lindsey A.F.,* 2003 WI 63, ¶ 14, 262 Wis. 2d 200, 663 N.W.2d 757; WIS. STAT. § 990.001(6). No weight, therefore, need be given to it.

¶ 15.   Smet's further "impairment" argument also falls substantively short. He argues that prosecuting a person under a statute requiring only proof of a detectable level of a restricted controlled substance in the blood and not proof of impairment is as absurd as prosecuting someone for carrying a concealed weapon who never had a weapon on his or her person, or for receiving stolen property if he or she never took possession of stolen property.

¶ 16.   The State's rejoinder is an analogy to speeding laws, a comparison we find more apt. Speeding laws require no showing of a threat to the public safety by every speeder. Rather, the legislature has determined that speeders as a class pose a threat to public safety. Whether or not one's driving in a particular instance actually is impaired by immoderate speed, excess speed alone is enough to result in prosecution. Similarly, a particular driver with a detectable amount of a restricted controlled substance in his or her blood may or may not be impaired on a given occasion. Nonetheless,

the legislature reasonably and rationally could have determined that, as a class, those who drive with unprescribed illegal chemicals in their blood represent a threat to public safety.

¶ 17. The legislature also reasonably and rationally could have concluded that the proscribed substances range widely in purity and potency and thus may be unpredictable in their duration and effect, *see State v. Phillips*, 873 P.2d 706, 708 (Ariz. Ct. App. 1994), or that, because no reliable measure of illicit drug impairment exists, the more prudent course is to ban any measure of marijuana metabolites in a driver's system. *See State v. Comried*, 693 N.W.2d 773, 776 (Iowa 2005). The legislature therefore could have concluded that maintenance of "absolute sobriety" in terms of these restricted controlled substances is reasonably and rationally related to public safety. *Cf.* WIS. STAT. § 346.63(2m) (prohibiting a person under the legal drinking age from operating a motor vehicle if he or she has a blood alcohol concentration greater than 0.0).

¶ 18. Smet next contends that WIS. STAT. § 346.63(1)(am) is fundamentally unfair, offending the "true concern" of due process. *See State ex rel. Lyons v. DeValk*, 47 Wis. 2d 200, 205, 177 N.W.2d 106 (1970). He proposes a scenario in which a college student is exposed to a roommate's marijuana smoking; after drinking a beer, the student then is stopped while driving home for "some minor traffic violation"; the beer odor on the student's breath prompts a blood draw, which reveals THC metabolites from the secondhand smoke; and the *"truly innocent"* student is prosecuted under this law.

■■

¶ 19. We reject this argument. First, to the extent Smet's contention is that the statute is unconstitutional

as applied, his argument is waived because he pleaded guilty. *See State v. Trochinski*, 2002 WI 56, ¶ 34 n.15, 253 Wis. 2d 38, 644 N.W.2d 891. His "innocent student" hypothetical likewise miscarries because he has no standing to complain that it is unconstitutionally overbroad. Outside of a First Amendment context, a person to whom a statute constitutionally may be applied[3] will not be heard to challenge that statute on the ground that, in other situations not before the court, it conceivably may be applied unconstitutionally to others. *See City of Milwaukee v. Wilson*, 96 Wis. 2d 11, 19–20, 291 N.W.2d 452 (1980).

¶ 20.  We are satisfied that prohibiting operation of a motor vehicle while having a detectable amount of a restricted controlled substance in one's blood bears a reasonable and rational relationship to the purpose or objective of the statute, and that the statute is not fundamentally unfair. We see no due process violation.

### 3. Equal Protection

¶ 21.  Smet's final argument is that the statute violates the Equal Protection Clause. When a statute is challenged on equal protection grounds, we first must determine the level of judicial scrutiny the statute requires. *State v. Thomas*, 2004 WI App 115, ¶ 25, 274 Wis. 2d 513, 683 N.W.2d 497, *review denied,* 2004 WI 138, 276 Wis. 2d 28, 689 N.W.2d 56 (Wis. Sep. 20, 2004). We accord it strict scrutiny if the legislative classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvan-

---

[3] This opinion ultimately will hold that WIS. STAT. § 346.63(1)(am) also is constitutional as to Smet on equal protection grounds.

tage of a suspect class. *Id.* Otherwise, the appropriate analysis is whether the legislative classification rationally furthers a purpose identified by the legislature. *Id.* This inquiry is largely the same as that conducted under the due process analysis. *State v. Jorgensen,* 2003 WI 105, ¶ 32, 264 Wis. 2d 157, 667 N.W.2d 318. Under this "rational basis" test, equal protection is violated only if the classification rests upon grounds wholly irrelevant to the achievement of the state's objective. *Thomas,* 274 Wis. 2d 513, ¶ 25. The legislature need not state the purpose or rationale justifying the classification. *Id.* As long as there is a plausible explanation for the classification, we will uphold the law. *Id.*

¶ 22. In an effort to secure strict scrutiny, Smet resurrects his impairment argument. He asserts that strict scrutiny is required because the statute creates a classification of drivers for whom impairment need not be proved, and that this classification interferes with his fundamental right to present a defense relative to similarly situated drivers. He begins by listing numerous defenses available to other drivers charged with violating Wis. Stat. § 346.63(1), namely, allegedly drunk drivers. He then asserts that these defenses all relate to impairment, making them unavailable to allegedly drugged drivers, with the result that similarly situated people receive disparate treatment.

¶ 23. Smet's disparate treatment argument first stumbles because it is based on the faulty premise that "driving under the influence" means impairment. It does not, as we already have demonstrated. *See Muehlenberg,* 118 Wis. 2d at 505. Wisconsin Stat. § 346.63(1)(am) and (b) prohibit driving with "a detectable amount" and "a prohibited . . . concentration" of

538

the specified substance. Both are status offenses without proof of impairment required.

¶ 24. Moreover, Smet is not singularly deprived of a defense; the statute itself provides one if he can sufficiently demonstrate that he had a valid prescription for the substance found in his blood. *See* WIS. STAT. § 346.63(1)(d). As with other driving under the influence prosecutions, Smet also would have at his disposal an array of evidentiary challenges. These include erroneously being limited to a single test, and challenges to the test itself, such as chain of custody, whether the test was conducted as directed by statute, the reliability of the testing device, and the credentials of the laboratory or the technician. *See State v. Disch*, 119 Wis. 2d 461, 471, 351 N.W.2d 492 (1984).

¶ 25. Smet may desire a particular defense, but that is not what the constitution guarantees. The right to present a defense means that a defendant must be afforded a meaningful opportunity to present a complete defense, including the right to call, confront and cross-examine witnesses. *See State v. Heft*, 185 Wis. 2d 288, 303, 517 N.W.2d 494 (1994); *see also State v. Pulizzano*, 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990) ("The constitutional right to present evidence is grounded in the confrontation and compulsory process clauses of Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution."). We see no abridgement of that right.

¶ 26. Having concluded that the classification does not impinge on a fundamental right, we next must examine whether the classification rationally furthers a purpose identified by the legislature. *Thomas*, 274 Wis. 2d 513, ¶ 25. Equal protection does not deny a state the power to treat persons differently; rather, the state

539

retains broad discretion to create classifications so long as the classifications have a reasonable basis. *McManus*, 152 Wis. 2d at 131. We will not invalidate a statutory classification even if it results in some inequity unless the classification is "patently arbitrary" and bears no rational relationship to a legitimate government interest. *Id.* (citation omitted).

¶ 27. The classification here is not "patently arbitrary" because neither Wis. Stat. § 346.63(1)(am) nor § 346.63(1)(b) requires proof of impairment. Further, as noted earlier, the placement of this prohibition within § 346.63 signifies a legislative determination to further the aim and intent of the entire statute, which is to promote highway safety. *See Muehlenberg*, 118 Wis. 2d at 504–05 and n.2. Smet wisely makes no argument that this is not a legitimate governmental interest. Having already determined that there exists a rational basis for the legislation under a due process analysis, we need not further examine it in the context of equal protection. *See Jorgensen*, 264 Wis. 2d 157, ¶ 32.

¶ 28. Finally, we observe that ten other states— Arizona, Georgia, Illinois, Indiana, Iowa, Michigan, Minnesota, Pennsylvania, Rhode Island and Utah—also have "per se" drug laws prohibiting a person from driving with any amount of certain illegal controlled substances in his or her system, regardless of impairment. Courts from those states that have addressed the constitutionality of their similar statutory provisions likewise have determined that the prohibition against driving with a controlled substance in one's system was rationally related to the governmental goal of protecting other drivers and is a valid exercise of the state's police power. *See, e.g., Love v. State*, 517 S.E.2d 53, 57 (Ga. 1999); *People v. Fate*, 636 N.E.2d 549, 551 (Ill.

1994); *Phillips*, 873 P.2d at 709–10. Smet directs us to no authority favorable to his arguments.

## CONCLUSION

¶ 29. Smet has not shouldered his heavy burden of demonstrating unconstitutionality beyond a reasonable doubt. Indisputably, regulating the safety of our roadways is a proper exercise of the police power. We hold that the per se ban on driving or operating a motor vehicle with a detectable amount of a restricted controlled substance in one's blood, as set out in Wis. Stat. § 346.63(1)(am), bears a reasonable and rational relationship to that goal and is not fundamentally unfair, such that we see no due process violation. We also hold that the statute does not offend principles of equal protection since Smet has not established that the statute either interferes with a fundamental right or operates to the peculiar disadvantage of a suspect class. His constitutional challenges to § 346.63(1)(am) fail.

*By the Court.*—Judgment affirmed.